Spencer, J.
The legal questions contested in this case are identical with those presented in “ Boye vs. Girardey, et al.,” reported in 28 A. p. 717.
The case has been argued with much ability on both sides, and the discussion has taken a wide range; but under the view we have taken it *382 will not be necessary to enter upon many of the interesting questions presented for consideration in argument.
We agree with our predecessors that the “ duty ” imposed by sec. 145, R. S., upon auction sales is not a lax on property, and does not fall within the prohibition of the amendment of 1874 limiting taxation to 12¿ mills.
The sale of property at public auction is not a matter of common and natural right, beyond the control or even prohibition of the legislative power. This State, in common with all others, has constantly exercised the most absolute and complete control of the matter from its very organization. The “duty” in question has been levied upon auction sales without challenge, since the act of January 15,1805. The Legislature has at all times prescribed the qualifications of auctioneers, and by acts of March 20, 1809, and March 10,1813, limited their number, and even authorized the appointment of a special auctioneer for horses and cattle, and prohibited under severe penalties all persons not duly authorized from selling at auction. Many of these provisions find themselves in the Revised Statutes of 1870. By the existing law it is not every body who can be an auctioneer. The law requires him to be a “registered voter” in the parish where he exercises his calling, and he must obtain a license from the Auditor ; that he must not be “ a defaulter; ” must “give bond” in favor of the Governor, and take the oath prescribed, “to secure the faithful performance of all the duties required bylaw toward all persons who may employ him,” and toward the State. It prescribes the time and manner of accounting to the State, and enacts special rules for selling certain kinds of property, such as jewelry, and even prescribes the time of day and plans of sale, and the per centum of their compensation. For seventy years these acts have stood upon our statute books, and no one ever entertained the idea their enforcement infringed upon any of the natural and inalienable rights of man. We think that we may accept the interpretation resulting from this undisputed and long exercise of power, as conclusive that the State may place such restrictions and impose such conditions as it pleases upon this mode of selling, and even forbid it altogether. It may, therefore, impose ,a oharge or duty on goods so sold, to be paid by the vendors availing themselves of the manifest advantages of that mode of sale which the State has organized and, in some sort, guaranteed through the bonds and oaths which it exacts for the security of the public.
Selling at auction through a licensed auctioneer is a privilege which the State may grant or withhold, and for the exercise of which, and as equivalent for the advantages of which, it may exact a “ duty ” or impose a charge, either in the form of a commission paid to the auctioneer, or to itself directly, just as it might impose a duty or toll on *383 goods transported over a turnpike or bridge established by the State for the safety and convenience of the public. We find no prohibition in the Constitution, express or implied., against this exercise of power; and not being forbidden, under a well-recognized rule of interpretation as to the powers of the States, it is permitted. Cooley, Cons. Limitations, chapter five, pages 85 — 92, and chapter sixteen of same work.
A tax carries with it the idea of imposition and compulsion. In the matter under consideration, selling at public outcry through a licensed, bonded, and sworn auctioneer, there is no such ingredient. It is purely optional with the seller whether he will or not avail himself of the advantages offered by the State upon the terms it proposes. If he do avail himself thereof he thereby agrees to pay the charges imposed. “ Volenti non fit injuria.”
We see nothing in this which resembles a property tax, beyond the fact that the charge or duty imposed and exacted is calculated on the price of the property sold. It has none of the legal effects of a property tax. Its imposition is voluntary. It does not affect the property with lien or privilege, and is not a charge upon the property in the hands of any body.
Holding, therefore, that section 145 of the Revised Statutes does not impose a tax on property, it is unnecessary to consider the arguments based upon article 118 of the Constitution, and the amendments of 1874, prescribing equality and uniformity of such taxes, and limiting their amount. Eor the same reasons we hold that the said section has not been repealed by subsequent general laws on the subject of taxation. Not being a tax, the subject matter is not the same, and there is no conflict or inconsistency. It is not pretended that the section has ever been expressly repealed.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be avoided and reversed; and it is now ordered that plaintiff’s demands, as well as those of Hafner and others in their petition of intervention filed July 3,1877, be rejected definitively, and that plaintiff’s injunction sued out herein be dissolved and set aside. That said intervenors pay the costs of their intervention in both courts, and that plaintiff pay all other costs thereof.